IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TENNESSEE RIVERKEEPER, INC., ] | |
| ] | |
| Plaintiff, ] | |
| ] | |
| v. ] | |
| ] | 2:10-CV-3515-KOB |
| HOPE COAL CO., INC. and ] | |
| NATIONAL COAL OF ALABAMA, ] | |
| INC., ] | |
| ] | |
| Defendants. ] | |

**MEMORANDUM OPINION**

This matter comes before the court on Defendant Hope Coal Company's Renewed Motion to Dismiss (doc. 15), on Defendant Hope Coal Company's Motion to Dismiss Amended Complaint (doc. 24), and on Defendant National Coal of Alabama's Motion to Dismiss Amended Complaint (doc. 29). After Hope Coal renewed its motion to dismiss, Plaintiff Tennessee Riverkeeper moved to amend its complaint (doc. 20) and filed an amended complaint with the court (doc. 23). Hope Coal's motion to dismiss the amended complaint simply adopted the reasoning set forth in its previous motion to dismiss.

After National Coal's motion to dismiss came under submission, this court set a hearing on Hope's motions to dismiss and on National Coal's motion to dismiss, which it held on January 23, 2012. For the reasons stated on the record and summarized below, the court hereby GRANTS Defendant Hope Coal's Motion to Dismiss Amended Complaint and GRANTS Defendant National Coal's Motion to Dismiss. The court DENIES as MOOT Hope Coal's Renewed Motion to Dismiss as directed against the original complaint.

1

Hope Coal moved to dismiss Riverkeeper's case against it based on the mootness doctrine, or alternatively, because of the wholly past doctrine from *Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 108 S. Ct. 376 (1987), which bars citizen suits for wholly past violations. National Coal also moved to dismiss Riverkeeper's case against it, arguing that Riverkeeper failed to state a claim against National Coal in the amended complaint, that Riverkeeper's case was moot, and that Riverkeeper failed to provide adequate notice for a subset of its claims against National Coal.

At the hearing, Riverkeeper acknowledged that it could no longer maintain suit against Hope Coal for injunctive relief. Riverkeeper nevertheless argued that it could maintain a suit for civil penalties against Hope because the ADEM consent order only addressed violations up to May, 2010,[1] while effluent violations continued after that time. Riverkeeper also argued that it should be allowed to maintain suit against National Coal for civil penalties, attempting to raise a question of fact as to who operated Meredyth mine from May, 2010 until April 29, 2011, the date when ADEM approved the transfer of Hope Coal's NPDES permit to Meredyth mine.

Riverkeeper, in arguing that it should be able to assert civil penalties for effluent violations from May, 2010, to March, 2011, acknowledged that it had no precedent to support its position. To rebut Riverkeeper's unsupported legal argument, the defendants argue that ADEM's consent order, although it only covers violations up to May, 2010, implicitly covers violations occurring after May, 2010 because of the time necessary for ADEM to draft a consent order and for Hope to take remedial action, including vegetation growth.

After considering the briefs and hearing the parties' arguments at the hearing, the court

---

[1] Hope Coal explained at the hearing that the consent order addressed violations up to June, 2010.

agrees with both defendants that the claim for civil penalties is mooted by ADEM's consent order that imposed a fine of $33,500.00, regardless of which defendant was operating the mine during that time. ADEM's consent order with Hope Coal, finalized on February 25, 2011, states in paragraph D under subheading "**Order**," that "[Hope Coal] agrees to implement all modifications outlined in the Engineering Report, including any modification identified by the Department, and shall fully comply with the effluent limitations of the Permits not later than **180 days** after issuance of this Order." *See* Pl. Opp. Br., Ex. E, doc. 31-5 at 8 (emphasis added). Thus, ADEM clearly contemplated that Hope Coal would require some time to implement measures to come into compliance with its NPDES permit.

Moreover, ADEM was also aware of the violations after May, 2010 at the time it finalized its Consent Order with Hope Coal on February 25, 2011. Whether ADEM factored the post-May violations in assessing its penalty against Hope Coal, or whether it simply chose to forego any penalties for these violations, this court concludes that to allow Riverkeeper to assert monetary liability against Hope or National goes too far in allowing Riverkeeper to supplant, rather than supplement, governmental action. *See Gwaltney*, 484 U.S. at 60 (explaining that the CWA's structure "suggests that the citizen suit is meant to supplement rather than supplant governmental action"). As the Supreme Court explained in *Gwaltney*, "[i]f citizens could file suit, months or years [after the Administrator issues a compliance order], in order to seek penalties that the Administrator chose to forego, then the Administrator's discretion to enforce the Act in the public interest would be curtailed considerably. The same might be said of the discretion of state enforcement authorities." *Gwaltney*, 484 U.S. at 61.

The court also will not assume that Hope and National Coal attempted to snooker ADEM

by "playing some little game of footsy" over who had control of the Meredyth mine, as Riverkeeper suggested at the hearing. Absent any evidence to the contrary, this court will instead assume that ADEM is competent and had its own rationale for choosing to forego additional civil penalties on either defendant when it was aware effluent violations were occurring at the Meredyth mine and when it had entered into consent orders with both defendants before effecting the transfer of the NPDES permit. Accordingly, the court finds no basis on which Riverkeeper may state a claim for civil penalties for wholly past violations.

Riverkeeper also argues that it may still assert injunctive relief against National Coal. Although the discharge monitoring reports show that no effluent violations have occurred at outfalls 13, 14, 15, or 16—the locations where Riverkeeper alleged violations in its notice of intent to sue—since April, 2011, Riverkeeper nevertheless maintains that the National Coal is operating the Meredyth mine in a way that is either now causing unreported effluent violations or will soon cause future effluent violations. To support this assertion, Riverkeeper relies on language from the Supreme Court in *Gwaltney* that "the defendant's burden [to have a case dismissed as moot] 'is a heavy one'" and that the "defendant must demonstrate that it is 'absolutely clear that allegedly wrongful behavior could not reasonably be expected to occur.'" *See Gwaltney*, 484 U.S. at 66. Riverkeeper also relies on November 5, 2010 and July 7, 2011 inspections by ADEM indicating deficiencies at the mining site and raising concerns over settling ponds 11 and 12—outfalls not identified in Riverkeeper's notice of intent to sue.

This court finds Riverkeeper's reliance on *Gwaltney* misplaced. As Judge Acker stated in his excellent opinion in *Black Warrior Riverkeeper*, *Inc. v. Cherokee Mining*, *LLC*, 637 F. Supp. 2d 983 (N.D. Ala. 2009), this test for mootness "comes from cases in which the defendant

**voluntarily** ceased CWA violations subsequent to the commencement of a citizen suit," and should not apply when Hope Coal's remedial efforts, undertaken after Riverkeeper filed suit, were not voluntary. *See Black Warrior Riverkeeper*, 637 F. Supp. 2d at 987 (emphasis in original). For this court to allow this suit to go forward after ADEM has entered a consent order, Riverkeeper must demonstrate that "there is a serious prospect that the . . . violations described in the complaint will continue to occur notwithstanding the consent decree." *See Black Warrior Riverkeeper*, 637 F. Supp. 2d at 989. Riverkeeper, however, does not attempt to demonstrate a serious prospect of future violations as to outfalls 13, 14, 15, and 16, but instead implies that National Coal will inevitably violate its NPDES permit based on its maintenance of ponds 11 and 12.

In response to Riverkeeper's new allegations regarding ponds 11 and 12, raised for the first time in its response to National Coal's motion to dismiss, National Coal argues that Riverkeeper has not provided adequate notice, as required by 40 C.F.R. § 135.3, of violations that occurred later in time and at different outfalls. Although the parties dispute how strictly the court should construe these provisions, the court agrees with National Coal that these regulations, at the very least, require notice of violations occurring at different outfalls. *See Pub. Interest Research Group of New Jersey v. Hercules, Inc.*, 50 F.3d 1239, 1248 (3d Cir. 1995) ("We read the regulation to require just what it says: that the citizen provide enough information to enable the *recipient* . . . to identify the specific effluent discharge limitation which has been violated, including the parameter violated, the date of the violation, ***the outfall at which it occurred***, and the person or persons involved.") (emphasis added); *see also Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 399–402 (4th Cir. 2011) (explaining that the notice

5

requirements allow governmental agencies to take responsibility for enforcement of violations and provide violators an opportunity to attempt compliance, and also explaining that a "plaintiffs' lack of information before their suit was filed cannot excuse deficiencies in the notice letter, because those deficiencies prevented attainment of the legislative objectives encouraging pre-suit governmental involvement and securing violator compliance"); *Atwell v. KW Plastics Recycling Division*, 173 F. Supp. 2d 1213, 1222 (M.D. Ala. 2001) (expressing skepticism about the Third Circuit's liberal reading of the regulation, and strictly construing the regulation). *But see A. States Leg. Found., Inc. v. Stroh Die Casting Co.*, 116 F.3d 814, 820 (7th Cir. 1997) (explaining that it did not read *Hercules* as adopting a rigid rule requiring outfall-by-outfall notice in all cases, albeit under facts where the alleged violator simply redirected a stream of contaminated water to another outfall). Accordingly, this court rejects Riverkeeper's attempt to state claims for potential violations at outfalls 11 and 12 without first providing the notice required by 40 C.F.R. § 135.3.

      Without any basis to assert monetary relief or injunctive relief, the court concludes that Riverkeeper's complaint fails to state a claim upon which relief can be granted, and accordingly this case must be DISMISSED with prejudice as to both defendants. Although the court finds no legal basis on which to allow this case to proceed at this time, it commends Riverkeeper for its diligent efforts in addressing the environmental concerns posed by the Meredyth mine, and credits its efforts thus far in triggering ADEM enforcement to resolve those concerns. Should National Coal violate its NPDES permit in the future, this order does not prevent Riverkeeper from initiating a subsequent citizen suit.

DONE and ORDERED this 26th day of January, 2012.

                                              KARON OWEN BOWDRE
                                              UNITED STATES DISTRICT JUDGE